May it please the court. My name is James Feldman and together with my colleague, Mr. Breslow, we represent the appellant Benjamin Galecki. Our co-defendant and co-appellant Burton Ritchie adopts by reference all of the arguments that we make on his behalf. And Mr. Galecki in turn adopts the arguments made in Mr. Ritchie's briefing, which will be argued today by Mr. Breslow. Mr. Galecki's convictions and 20 year mandatory minimum sentence should be vacated. His CCE conviction should be vacated because there were not five criminally culpable supervisees and there was not a pattern of three qualifying predicate offenses. His CCE and analog act convictions should be vacated because there was insufficient evidence of the analog act convictions. And because the analog act is void for vagueness. His fraud conviction should be vacated for insufficiency because there was no evidence of mens rea or criminal intent. The money laundering convictions are purely derivative and should be vacated for the same reasons as the underlying convictions. And at a minimum, the deliberate ignorance instruction here was error and requires a new trial. I'll begin with the CCE conviction to sustain Mr. Galecki's CCE conviction. The government had to prove five supervisees with criminal culpability. It is not sufficient if they simply unwittingly further unlawful activity in this context, because the underlying offenses are analog act offenses. That means that each of the five supervisees must be shown to have had the requisite mens rea to be guilty of a money laundering of an analog act conspiracy offense. At various points in these proceedings, seven people have been suggested in satisfaction of the requisite five. Mr. Vale, Mr. Miss Duty and Mr. Dupree, Mr. Finch, Ms. Templeman and Mr. Bakerstaff. And finally, Mr. Eaton, the co-defendant who was acquitted. This court need only consider the first three, Vale, Duty and Dupree, because without one of them, there are only four and the conviction falls. So unless the government can prove that the evidence is sufficient to sustain a conspiracy conviction as to either Vale, Duty or Dupree, Mr. Galecki's CCE conviction must be vacated. As to Mr. Vale, he did not testify. The facts regarding him are contained in a single sentence on page 14 of the government's brief in which they state that Mr. Finch said that Mr. Vale worked in manufacturing. That's it. The government appears to have abandoned any reliance on Mr. Vale in their appeal. They did not argue that he qualified for the five in the district court. Ms. Duty did not testify, was not argued as one of the five by the government below. The facts regarding Ms. Duty are set forth in a single sentence on page 14 of the government's brief. And it consists of the statement that she interviewed Mr. Finch and told him to refer to the products using their fragrance rather than their flavor. That's it. The third and last of the essential three that they would need is Mr. Dupree. Mr. Dupree did not testify. The facts relating to Mr. Dupree are set forth in two sentences on page 13 of the government's brief. Mr. Templeman, Ms. Templeman referred to him as another salesman. And the statement is made that all company employees were used to were required to use certain terminology. That's it as to Mr. Dupree. That's as far as the court has to go on the CCE. If it were reviewing a conviction of veil duty or debris for sufficiency of the evidence as to an analog act conspiracy, it would be compelled to reverse because there is no evidence of any mens rea on their part. And for that reason, the court need go no further than to reverse Mr. Galecki's convictions and to conclude that none of those three qualify. Well, if we if we were to disagree on one or more of them, we had to reach Mr. Eaton. Can you address this situation? I can. Let me mention that in order to get to Mr. Eaton, obviously, they would also need to probably get all three of Templeman, Biggerstaff and Finch. So I'll talk about Eaton first, and then I'll go back to those three, because this is not a case where they have five. It's not even close. They don't even have one. If they had one, I suppose their best would be Mr. Eaton, because at least he was charged as a co-defendant. And there's a circuit split. And the Sixth Circuit says you can count it. Fourth Circuit says you can't count it. It's clear they have to have Eaton. Without Eaton, there's no pattern of three. They don't have to have him for the five. They have to have him for the pattern of three. So the court would have to part ways with the Fourth Circuit, enter into a circuit split and decide that he can be counted even though he was acquitted. But to do so, there would then be the question of what was there even sufficient evidence of his guilt. And there was not. There was zero evidence that Mr. Eaton had the requisite mens rea. He did not know the ingredient in the product. And there was no evidence that he had any idea what he was doing was unlawful. Going back to the first issue, doesn't our decision in the Lowe case and the Supreme Court decision in the Powell case that cites suggest that the acquittal of a co-defendant or on another charge would not preclude upholding a jury verdict if it's otherwise supported by sufficient evidence against another co-defendant, even though they are inconsistent? Well, yes, sir. I think there's two different issues here. The first is, is there some legal preclusion that when there's an acquittal, that's it? You just can't count it no matter what. That seems to be what the Fourth Circuit rule. What I think your honor is questioning and what the Sixth Circuit rule and what the government argues is, no, there's no per se bar. Now, you still have to go look and see whether the evidence was sufficient to count that acquitted person as a supervisee. There still has to be evidence from which a jury could have concluded that Mr. Kolecki. Correct. There's no doubt that that's true, that you still have to do the assessment of the sufficiency of the evidence. Yes. My question, you were making two arguments. You were making in addition to that argument, you were arguing that, you know, in light of the circuit split, that we should adopt the view that, you know, that is closer to the Fourth Circuit, that we can consider it. But my question is, is that open to us in light of the Lowe decision and its reading of the Powell case? I think it is, because those are questions with straight up conspiracy, where you have two defendants charged with conspiracy. The distinction here is at CCE, it's a complex statute and the issue is whether or not people were culpable within the five. My point, your honor, is just we don't have to get anywhere near that issue. No need to go there. You could either A, look at the evidence of Mr. Eaton and decide that it is insufficient, and that's why the jury acquitted him. Or you could say, well, that's one. Where's the other four? Ms. Templeman testified as a government witness on direct examination that she believed her conduct was lawful. And the government says, well, that's just self-serving. Okay, well, they put it on. And disregarding her self-serving expulpative testimony does not substitute for evidence of her guilt, which is absent. Mr. Biggerstaff testified, and he never said he thought any of this was illegal. In fact, he said we had a policy where if they took our product, if law enforcement took our product, we'd ask for it back. And Mr. Finch, the last of the purported seven that have ever been discussed, he worked in manufacturing, and he said only after the fact did he think this was kind of sketchy. So your honor, Judge Collins, I understand what you're saying. And our point is, okay, there's a circuit split there. It doesn't matter on this because you don't have four other supervisees that were criminally culpable, even if you counted Mr. Eaton. Mr. Galecki, CCE convictions and the 20-year mandatory minimum the district court did not want to impose should be vacated for insufficiency of the evidence. The CCE and the Analog Act convictions should also be vacated because the Analog Act is void for vagueness, as applied to the substance XLR-11. I believe that prosecutions for XLR-11 under the Analog Act result, for the first time in the history of our republic, in the imprisonment of people for conduct that it would be impossible to know is even considered to be unlawful. And I fear that this law, as applied here, if it is not vague, no identifiable boundaries in the law will remain. Well, but McFadden rejected the view, all right. It was in the context of interpreting the statute, but it said that it rejected a particular reading of the statute on the grounds that it would otherwise be left vague, impermissibly vague. So obviously the court thought that it had construed it in a way that resolved vagueness. So why isn't McFadden dispositive there? And in particular, why isn't its scienter requirement sufficient to save the statute from impermissible vagueness? First of all, McFadden does not control because the question of vagueness was not presented to the court. Instead, what was at issue was the appropriate mens rea. It is true, your honor, that they read a mens rea into the statute. The mens rea was necessary. They did not deem it sufficient. There is nothing in the opinion that says now the resulting statute is okay. And in any event, that's a facial challenge to the statute. This is the challenge as applied to the substance XLR11. I'm looking at McFadden and he invokes the canon of constitutional avoidance, arguing that we must adopt his vague. But that argument fails on two grounds. Under our precedence, this canon is a tool for choosing between competing plausible interpretations. It has no application in the interpretation of an unambiguous statute such as this one. But then they go on to say that even if the statute were ambiguous, his argument would falter. Under our precedence, a scienter requirement in the statute alleviates vagueness concerns, narrows the scope of the prohibition, and limits prosecutorial discretion. That sounds pretty dispositive on the question of whether the statute is unconstitutionally vague. That would answer it as to facially, your honor. But the question now comes to be as applied to XLR11. And that was not before the court and not answered by the court. But didn't that devolve into a question of sufficiency of evidence as to the issue of scienter? And if there is sufficient scienter to show that he meets one of the two McFadden categories of scienter that then it's not vague? Well, obviously, we argue that when we turn to the issue of scienter here, there isn't any, and the evidence is insufficient. But in this particular context, because scienter, I think you have to look a little further. What is it exactly that the scienter knowledge is about here? It is about whether the defendant knew that the drug qualified as an analog or was somehow controlled by operation of the analog act, whether it does or not, is a question of chemistry. So as applied here, the issue is whether or not XLR11 is substantially similar to that of JWHO18. And did the defendant know that? And so I understand your honor, that it would be a convenient way to feel comfortable about the vagueness to say, well, they have to know. But the object of knowledge here within this statutory scheme is not an objective fact. It is a subjective fact, whether or not two molecules are or are not substantially similar to one another is not science. It is not objective. But in the statute, there's three alternative definitions of a controlled substance analog. And the first relies on the chemical structure. But the second relies on whether it has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than that, I'm skipping over the same phrase, of a controlled substance in schedule one. So why isn't testimony or evidence that shows that they know that it produces a high sufficient to show the kind of scienter that would go to that second element? Because the statute is in the conjunctive. Both things must be true. The substance must make the user high. And it must have a substantially similar chemical structure. If Congress had wished to write a law that said if you sell something that makes someone high, that has, it has or between it. But I'm looking at 32. And it defines the term control substance analog means a substance one, two, or three does that has been construed, Your Honor, by every circuit to have considered the issue and the government concedes the point that it is to be read one and two. I know they noticed mcfadden has a footnote that says that they said that it's at I wondered, mcfadden doesn't say anything about that. They think I think it has been taken as a given that one doesn't do it, that it's got to be one and either two or three. It has to have the same structure. And then it has to either have the same effect, or you have to claim that it does. And does that mean the scienter would then have to extend to all three? Well, no, because what mcfadden says is just the two you don't have the last two are in are in the disjunctive. It's one and either two or three. So you have to have the same structure. And then it has to either have the same effect where you have to claim that it does. And so the mens rea has to go to both prong one and prong two. And prong one under mcfadden can be proven in two different ways according to the somewhat obtuse Clarence Thomas opinion, although I think that the that the chief's opinion cleans it up. But But basically, they can show either that the defendant actually understood the chemistry and knew or that it was controlled by operation of the analog act. Here, however, Your Honor, it is. And the point I'm trying to make is that what it is you're, you're positing that the defendant knew is that these two chemical structures are in fact, substantially similar to one another. And as you can see, one third of the molecule is completely different. This is not a circumstance where there's a one atom substitution or a two atom substitution. These are not within the 10,000 most similar substances to one another. Well, we do have testimony as to one of the defendants that he mentioned to someone else that they were just a molecule off from another substance. Yeah, that was a discussion of XLR 11. And you are 144. The issue here is not that the issue here is, you've got a tetramethyl cyclopropyl functional group. And here you've got a naphthyl functional group, and they're not the same. But it should, but it does provide some basis for circumstantial evidence that the jury could draw on inferences to awareness of chemical structures that together with other evidence might lead to other reasons. I don't agree, Your Honor, there was no discussion about this. And the fact that they knew that two other substances were one atom off. I mean, and they didn't even proceed on that theory. The government's theory of guilt on the analog act here was just their evasive action. They argued the jury don't listen to the chemist, just look at what the defendant did. My fear, Your Honor, however, is that I'm running into Mr. Breslow's time on the other issues. I would say that clear here, there was insufficient evidence that any of these defendants knew that which the consensus in the academic scientific community believes is not so. Mr. Feldman, Judge Gould, if I may interject, I'll give you a couple of extra minutes of time. There are two questions that I have that I'd like to hear you address. One is on the issue that Judge Collins was asking you about. If a statute is literally disjunctive in these different categories, chemical structure being the same, we're having an intoxicating effect like something else. What is the authority that binds our court to disregard the plain meaning of the statute where it says or, and instead to read or as and? But you said that's what the cases do, but what's the case that tells us? If you could be specific, what case specifically binds us to do that? I don't know the case off the top of my head, Your Honor. I took that as a given coming into the argument. We can certainly brief it. I can tell Your Honor that you would be splitting, I believe, with every other circuit if you were to now rule that it was in the disjunctive. That's okay. I don't mind splitting with circuits if I think they're wrong. So it'll be up to the panel if they want supplemental brief. But you've answered that one question. I have another question that I wanted you to address before you finish. And this is the sort of off the briefing of both sides issue, but that I wondered about on the fraud claims where you claim there's insufficient evidence. And your argument, as I understood it, was that there's no reliance can't be shown because the purchasers, the smoke shops knew exactly what they were buying. But my question is this, the indictment charging a fraud, does it have to be read as a fraud against the purchaser smoke shops? Or can there be a fraud against the government or against law enforcement because of deceptive conduct that hides the nature of the transaction? I didn't see any case cited by your side or by Ms. White that addresses whether there could be a fraud against the government. There are cases, not this one, where defendants are charged with a conspiracy to defeat the lawful functionings of the FDA. And so it's charged as a 371 conspiracy to defraud the government. This case did not charge it that way. This charge was a wire fraud. And the specific act of fraud was labeling the products not for human consumption, whereas they were for human whether or not the statement has the capacity to influence a purchaser, but the complete absence of any intent to defraud by Mr. Galecki. There's no evidence that Mr. Galecki was intending to fool anyone about anything. He was selling products that everyone knew what they were. He knew everyone knew what they were. And there simply isn't any evidence of any dishonesty or any effort to commit a fraud by Mr. Galecki. Had it been charged as a 371 conspiracy to defeat the law, it would present a different issue. The indictment did not charge that crime in this case, Your Honor. Thank you, Mr. Felman. So I don't know how much additional time we could have, but obviously on the particular record here, the deliberate ignorance instruction would be as far as the court would need to go to reverse, because under any scenario, that instruction was error. There is no argument that it was harmless if it was error. There was no awareness of a high probability here that the substance was controlled. But most importantly, literally nothing a defendant could do to try to learn that it was. You could have called the local chemistry department. They'd have told you the wrong thing. So all of the deliberate ignorance instructions make it clear that it's where it's solely and entirely the result of ignorance, that there was an obvious means to obtain the knowledge. Here, there's literally nothing these defendants could have done to learn except to hire a lawyer and a chemist, which actually they did, who told them they were not legal, which the jury never heard, which Mr. Breslau will address now. Thank you. I'm sorry, Mr. Judge, Collins was saying something, but I couldn't hear what he was saying. Oh, I thought I just heard you say that you said that they said they were not legal. Did I mishear you? No, that they were legal. Both the attorney and the chemist said, yeah, these are legal. I thought I heard the opposite. I apologize if I missed. I think I knew what you meant, but thank you. I used up your time with my questions, but we'll still give you and your colleague together three minutes for rebuttal. Mr. Breslau. Good morning, Your Honor. May it please the court. Brandon Breslau of Kynes Markman and Feldman PA. I've limited time to address the two remaining issues, briefed by Mr. Ritchie and adopted by Mr. Glucky. So I'll skip right to the issue of selective immunity and then rely on the briefing for the Fourth Amendment standing issue, unless Your Honors have any questions about that. In regards to selective immunity, when the government offers immunity or benefits to and the district court erred in denying appellant's motion to compel use immunity for two potential defense witnesses. And the law on this is straightforward. First, the defense testimony must be relevant, and that's not an issue on appeal. The government conceded this below. Timothy Dander was an attorney who advised the appellants that XLR-11 was not an analog. It didn't violate federal law or state law. And then Dr. Adam Libby was a chemist using his background so that XLR-11 would not be a controlled substance analog. Notably, the court, the district court below six months prior into denying appellant's motion to compel use immunity found this evidence relevant and only subject to admissibility to the, sorry, subject to the weight of it given by the jury at trial. Moving on to the second point, the government witnesses were granted substantial benefits. The crux of the district court's error below was that it thought that the government had to grant these witnesses immunity, its own witnesses immunity. It didn't do that. Defendants never argued that below. It was that they were given a substantial benefit. And this court's precedent says that substantial benefits favorable plea deals like those given to Ms. Templeman, Mr. Biggerstaff, and Mr. Finch, all government witnesses who were appellant's employees is enough to qualify for the selective immunity analysis. And so that error alone, which is the only thing the government argued below in its response to the defendant's motion to compel use immunity is enough to reverse on that order. The third part, which the district court did address on its own was whether or not the defense witnesses, Mr. Dander and Dr. Libby, were directly contradictory to the government's witnesses. It's important to note that it only needs to support a finding by the jury, not compel a finding of direct contradiction. It does not have to be clearly exculpatory. It does not have to be essential to the defense, but here it was. As Mr. Fellman pointed out, as apparent from the briefs, the government presented testimony about what it called evasive or illicit behavior by the appellants in operating their businesses. And they got a deliberate ignorance jury instruction to tell the jury that they consciously avoided learning the proposition that XLR11 is an analog. But what they didn't tell the jury and what was apparent from these defense witnesses is that they sought out that evidence, that advice, that what they were doing was not illegal and that XLR11 was not an analog. So there is a direct contradiction. And like I mentioned earlier, the government didn't argue below, but there wasn't a direct contradiction. Its response spoke, it listed that part of the Straub and Westerdahl tests, but it listed, but it only went directly to the fact that it did not grant immunity, which is true. We don't contest that they didn't grant immunity. It's that they granted those witnesses substantial benefits. Finally, the selective immunity has to have the effect of so distorting the fact-finding process. And there's no question here that failing to grant Mr. Dander and Dr. Libby immunity stacked the deck against these, against Mr. Galecki and Mr. Ritchie. The government proved its case in only one of two ways. And I think this illustrates the problem here with the district court's ruling. It either had to prove based on the reading of the analog act that the defendants had circumstantial evidence, there was circumstantial evidence to actual knowledge that they knew XLR11 was an analog, or they relied solely on the deliberate ignorance instruction that the Dander and Libby's testimony would have directly rebutted both. Appellants either operated with scientific and legal advices, therefore they couldn't have known that what they were doing was unlawful or, or sorry, and they took affirmative steps to learn what they, to learn those propositions or those opinions. And so therefore there would have been no deliberate ignorance instruction had this evidence been able to be provided to the jury. The only reason it wasn't was because the government didn't provide immunity to Mr. Dander and Dr. Libby as the defendants asked them to do. In assessing the issue of whether the fact-finding process has been been distorted, do we look at just whether or not the testimony that wasn't immunized would have been helpful to the defense or do the cases require some more clear contradiction between the factual assertions made by the benefited witnesses versus the witnesses who were not immunized? So there does have to be a direct contradiction, but if you take the example of Straub and Westerdahl, for example, those were issues of whether or not a government witness could say the defendant committed the crime, either through a confession or through some testimony about whether they saw that defendant at the scene of the crime. The contradicting evidence that this court found should have been immunized or at least subject to immunization was that that witness either was contradicted, not in terms of that the confession never happened, or not in terms of, oh, I can say that person wasn't at the scene directly. It was that there was something to call into question for the jury to decide whether there was a direct contradiction to that government witness's offered testimony. So for instance, in the case where there was a testimony in contradiction to that was, well, didn't this witness claim that they actually committed the shooting or that they were at the robbery and they were the ones who committed the crime? It's never a direct contradiction in the sense that Mr. Danda or Dr. Libby won't be able to say that the defendants didn't operate their business in some way. It's to provide the complete picture so that the evidence isn't stacked, the deck isn't stacked against Mr. Galecki and Mr. The government gets to argue it's deliberate ignorance instruction here is because this evidence was not presented to the jury. The jury should have been able to learn the totality of the circumstances, but they only did it because the government selectively immunized its witnesses. I understand the court has given me plenty of time. And so unless the court has any additional questions, we'll reserve the remaining of her, whatever time the court is willing to give us for rebuttal. Thank you. I have no questions. Judge Collins. I have nothing further. I think therefore we can turn to Ms. White. Good morning, ma'am. Can you hear me okay? You sound perfect. Yeah. Thank you. May it please the court, Elizabeth White for the United States. I'll go in reverse order and address the immunity issue first. What this court said in Straub is that it articulated a very narrow exception, explicitly narrow exception to the general rule that questions about prosecution and immunity are questions for the executive branch. And the narrow rule that the court recognized in Straub is that when the court, when the government grants immunity or some sort of favorable plea deal, cooperation, whatever with a government witness and denies immunity to a defense witness who would directly contradict what the immunized government witness is testifying that in a, in a way that distorts the fact finding process, that that's a problem. And what judge Biden said in the Straub decision is that this isn't going to happen very often because the survey of our, of our, he said a majority of our cases where a government seeks to compel immunity of a witness, that witness's testimony will not be directly contradictory to the prosecution's prosecution witnesses. And, and that is what we have here. The witnesses here who received cooperation agreements and got some sort of benefit for their testimony, they testified things like I taught Mr. Eaton how to manufacture spice, or I was told that if we didn't use code words, and if we said what this stuff really was, we would be fired. Or I sold tens of thousands of dollars of XLR11 to the defendants in mislabeled packaging. So it wasn't clear what it was. And, and neither Mr. Dandor nor Mr. Libby, as far as defense of Crawford would have said, would have been in a position to contradict any of that testimony. They wouldn't know. And so, and so the, the narrow exception in Straub just simply does not come into play here. And so I think that that's, and that's what the court recognized. Now it is true in the district court, there was some confusion on the government side about what constitutes immunity and, and the district court said that, but the district court also said, and he said, let's see. And, and while Galecki asserts that Dandor and Libby's testimony will contradict the mens rea element, he does not identify how their testimony would directly contradict that of a particular government witness. And, and here, my friend on the other side seems to be arguing that it doesn't have to. And that is just simply not the rule in this circuit. It does have to. And, and I think that they concede that, that they don't have any directly contradictory testimony. So, so I think that's all we need to say about that. Going to the, to the analog act. It is true. And this court recognized in way that the Supreme Court and McFadden forecloses a vagueness challenge to the analog act. Let me ask about this interpretive question because, you know, Mr. Feldman is correct in terms of at least how the case was presented in this case. The jury instructions did have the first element separated from the other two by and. So you did have to find the first one and one or two of the other. That's not how the statute is written, but that's clearly how this case went to the jury and the scienter went to the jury in a very similar phrasing. So do we take that then as settled for purposes of this case? I'll tell you what, I will say that, that that is how both of the parties interpret the statute in this case. That is how the defense interprets it. And that's how the government interprets that statute. You know, every, every case that I've seen about it has said, every case in this circuit and the Supreme Court and McFadden just sort of said, well, for the purposes of this analysis, we will accept the government's concession about how that is. And that is the government's position. I mean, obviously this court is not bound by the government's interpretation of something, but I'm not asking you to, to reject the government's interpretation. That is how the statute has been interpreted. In terms of the, you know, when, when does or really mean and, and when does and really mean or, I mean, this kind of brings up the issue on Lopez with the safety valve. I don't know if you're, I think there's a, there's a rehearing and bank on, on sometimes statutes, sometimes and means or sometimes or means and, but but there was not any dispute in the district court and there is not any dispute between the parties on appeal as to how that how that statute should be interpreted. But, but I think that what I want to do when we get to that, that also means that for purposes of scienter, because then you carry that over into the scienter instruction. So for establish at least one of two things. One is that they knew it was covered by the control substances act, which seems like a sort of legal knowledge point. Now, legal knowledge isn't required because there's an alternative, but the alternative had a knowledge of chemical structure. So am I reading those instructions correctly that you either needed to show that they actually knew it was covered by the act or that they had awareness of the chemical structure. The chemical structure and, and pharmacological effects. Yes. And, and, but, but as to the second one, it's they have to, it's irreducibly the case that they have to have the chemical structure. Right. I think that with, with respect to the jury instruction and the jury instruction said, there's two ways that the government can prove knowledge. One is if the defendant knows that that this is covered under the analog act, even if they don't know what the center or what the chemical is. And then the other is that they know the characteristics of the chemical that, that make it subject to the, to the analog act. And when the government, One of those, one of those is chemical structure and then one of the other two. So you had to show scienter as the chemical. So, so irreducibly in order to sustain the scienter, there has to be scienter that it's covered by the act or that chemical structure. And then some other things going with that. Yes, that is correct. That is correct. And, and in this case, and so first of all, just with respect to vagueness, and then I want to get into sufficiency because I do think that they're wrapped in pretty tightly together, but with respect to vagueness, the one point that I want to make is, is I do think that vagueness challenges are foreclosed by McFadden as this court recognized in way. But I also think that in this case, that that makes a lot of sense because I think generally the concern about vagueness is that a potential defendant will have no warning about what conduct is or is not permitted. And, and so what the, what we say is the law has to give a person of ordinary intelligence, a reasonable opportunity to comport themselves within the law. Like we don't want people walking down the street, accidentally breaking the law because the law was so vague. They didn't know what they, what was and was not allowed. And I think in this case, these defendants are really trying to take that and just do a 180. I mean, they're, they are arguing that they have a right to get as close to the line as possible without going over. And that unless the law tells them precisely how far they can go in effect, violating the spirit of the law without, you know, violating the letter of the law, then therefore the statute is unconstitutionally vague. And, and first of all, I just, I don't think that that is the concern that the courts have about vagueness. I don't think that is the nature of the concern about vagueness. And, and also it really flatly contradicts what the Supreme court has said for over a hundred years, which is there are, the law is full of instances where a man's fate depends on him estimating rightly some matter of degree. And so just because a law requires a person to estimate some matter of degree does not make the law constitutionally vague. Now here in this case, I do believe that there was overwhelming evidence that the defendants were aware that this, that this chemical was covered by the analog act. And what the Supreme court said in McFadden is that this element of knowledge will generally be established by circumstantial evidence. And they gave, they gave examples and they said the circumstantial evidence could include a defendant's concealment of activities, evasive behavior with respect to law enforcement, knowledge that a particular substance produces a high similar to a controlled substance and knowledge that a Am I correct in reading the deliberate ignorance instruction that it only was applicable by its terms to the first of the two methods of establishing knowledge? Yes, that is correct. That is correct. And so the deliberate, the deliberate ignorance instruction went to the under the analog act and deliberately declining to confirm that knowledge. And in terms of the evidence, I think that that they're evasive behavior with law enforcement. There is one story that I think really is telling Corey Finch testified that at one point he needed, he worked, he worked at Zen sense and he needed to go to the warehouse to pick up some packaging materials. And so he asked Mr. Glecky, can I use the company truck? And Mr. Glecky said, yes, you can use the company truck. Oh, but by the way, it looks like the tags are expired, but if you get pulled over, don't worry about it. We renewed it. The receipt for the renewal is in the glove box and you can just show him that. And then he said, but don't put any products in the truck until the new tags arrive. Right. He wasn't worried about getting pulled over for tags, but he was worried about getting pulled over with this product in the truck. And that shows evasiveness with law enforcement. The company actually had a policy when it comes to knowledge of the seizure, that the product was subject to seizure. They had a policy, two witnesses testified that their policy for retailers is if a shipment to a retailer got seized the first time they would replace it, the second time it was on its own. And my friend on the other side noted that one of the witnesses was asked, are you aware that they would call the agency to try to get the product back that had seized it? And he said, yes. And then he said, but they never did actually get the product back. So I think that they were aware that it was subject to seizure. They were evasive with law enforcement. The concealment of what they were doing is just overwhelming. They mislabeled the chemical that came in from China or from the various suppliers in the United States was mislabeled so that no one would know what the products were labeled not for human consumption when everyone knew full well that these products were intended for human consumption. On that point, let me ask you about the fraud claim, because you just said everyone knew that for human consumption. So how is it possible to say that these were fraudulently labeled and it was a scheme to defraud based on the labeling in that respect? Yeah. The district court relied on this court's decision and Lindsay, which was itself based on Supreme Court's decision, and that is to say that the federal fraud statutes do not incorporate the common law requirement of fraud that there be reliance. It is an objective test that looks at the intrinsic nature of the statement to see whether it is capable of misleading. And when these is herbal essence, aromatherapy, potpourri, that is not for human consumption, when that is not what it is, that statement, that misrepresentation is intrinsically capable of misleading. The one thing I would add, and I think that this sort of goes to not just the fraud. There's a difference between saying that there's no reliance requirement because reliance would need to show that a particular purchaser was. But if everyone is in on the joke, so to speak, and everyone understands that, you know, ha ha, we put this on here, but everyone knows that nobody pays any attention to that, nobody believes it, where's the capacity to mislead? I think that it's the capacity to get someone to part with their money is the And from the amount that people were paying for this, they clearly well knew this was not an expense. It's way too expensive. I'll tell you what, there was interesting testimony, a DEA agent named Agent Albrecht testified. And one of the things that he testified about at some length is, is how folks in the spice industry, as they say, um, they sort of take comfort, they clothe themselves in this illusion of legality, and they take some comfort in being able to say that, that they thought it was legal, and that has this illusion of legality. And he actually testified that, that, you know, some of these head shop owners also take comfort in, you know, well, it says it's not for human consumption. And therefore, it's okay for me to put it on my shelves and sell it. And, and I think that that actually does go to the to the very nature of the fraud. Because first of all, first of all, if the defendants didn't think that what they were doing was illegal, then they could have just said to the to the head shops, we have a synthetic cannabis, It goes to kind of a fraud on the government. And that's not the theory in the indictment. Oh, no, no, no, I thought, yeah, I'm talking about the indictment is that this is a fraud on the recipients of whether they be the retailers or Yes. And I think that that when that if the if the defendants had told the retailers the truth, and if they had said to these to these head shops, we have a synthetic cannabinoid made with a that your customers will take home and they will smoke and they will get high from it. You know, I think a lot of those head shops might have said, Yeah, no, we'll take the pass. And it was because they said this is it's it's potpourri and it's not for human consumption. And it's okay for you to put it in your shop and sell it because because there's there's nothing wrong with it. It's just it's potpourri and herbal essence. And I think that that those misrepresentations made the head shop retailers comfortable to turn over their money and buy this product. The fact is, is that the statements themselves are capable of influencing a decision maker. And that is and that is all that's necessary. And that is what the that is what the jury found here is why do your theory the capable of influencing aspect of the conduct or the false statement can exist independent of the falsity? I'm sorry, could you restate that? I don't know. The theory you just said, I've always understood the materiality of a false statement was whether or not the delta between the truth and the statement could influence behavior. But what you just said, is that people who know that they're that the statement is false, can be influenced by it for reasons that are unrelated to its truth and falsity, because they want the false labeling for the patina of legality that comes with it, even though they know it's, it's false. That's a very different concept. And I'm not sure that I I'm not sure that I that, you know, as as agent Albrecht testified, you know, for a lot of people, this, this is this kind of gray area. And this is they, they like to have this illusion of legality, and they'd like to so so whether or not, you know, if the head shop owner actually thinks that it's being used for potpourri, if they think that it's being used for herbal essence, I think most of them didn't, but but it was still the false statements that the defendants made that made them buy the product and then made them stop the product and made them sell the product to their customers. And, and, you know, as this court said, in Lindsay, it doesn't it doesn't matter. If the statement didn't affect the decision maker, I mean, the two wrongs don't make a right. It's like, even if even if the decision maker was negligent, even if this decision maker didn't care about this thing that they should have cared about. That's what that's what the court said, Lindsay, it doesn't matter, because intrinsically, that misrepresentation is capable of influencing the decision maker. And that's all that's necessary. So Miss White, I got to ask a question. Do you agree with your colleague, Mr. Feldman, that the indictment here in its mail and wire fraud charges was not aimed at the deception of the government? Or didn't charge that? If we did not charge fraud on the government, it like under 371? No, no. That is correct. If I could, let's see. I think that Oh, and the one point that I wanted to make about the we may have covered this already, I apologize, is that is that it is true that that only applied to the first way of knowing about the analog act violation, which is that the defendants knew that there was a very high probability that that their conduct violated the analog act, there are this that this chemical violated the analog actor was controlled pursuant to the learn the truth about that. And I think that that's what we have here. But But really, I think we have actual knowledge through, as I said, all of the concealment, evasiveness with law enforcement knowledge that it would get people high both defendants that can I ask you about the CCE count? Can you address Mr. Feldman's argument that without bail, duty and decree, you can't get to five and that all three of them are out? We do need five. And the jury, I mean, the you know, the law says that the jury doesn't have to the government doesn't have to charge by the name five specific names. There's no special verdict form. But But it is true that we need five. And I think that, you know, my, my basic argument on that point is that the jury is not required to check their common sense at the door. These are these are people who are either salespeople making piles of money more money than they ever made before than they ever made sense. selling something that they are instructed that if they say what it actually is, they will be fired. They are, you know, they're manufacturing this stuff. They've got these chemicals that are kept in a safe that come from China that are mixed in. It's like the idea that they didn't know that what they were doing, again, you know, they they paint themselves, they like this, they, they cling to this illusion of legality. But at the end of the day, you know, these folks knew and I mean, I will say this is not a this is so we have to prove three violations involving and we have to prove that the defendants acted in concert with five people. And the argument that the defendants were making in the trial court, which which my friends on the other side here on appeal do not renew, is that the government had to prove that each one of those three events, each involved five people, and they don't renew that on appeal. I mean, that's just that's not a correct statement of law. But But when in their closing argument, the lackeys Council, going through these three, these three, they said, well, this one only involved eaten, so you don't have five there. And this one only involved eating, so you don't have five there. And then they said, with respect to with respect to the distribution, okay, you know what, I'm gonna leave that one alone, because obviously, there was testimony that there were other people in Florida, but you need three, and this and you don't have three. So that so the point about that, to get to three, you really need eaten. And so you need to get around this acquittal issue. Yes, yeah. You need three, three substantive events, five underlings. And, and I and I think that it sounds to me like Mr. Feldman might be backing off of the argument about the rule of consistency. This, you know, the rule in this circuit is based on Powell, is that juries can have inconsistent verdicts, and a person can be convicted of conspiracy, even if every person that they are alleged to have conspired with is acquitted, because juries make acquittals for a number of reasons for compromise or for leniency. In this particular case, I think that, you know, you don't need to delve into it to figure out what the jury was thinking. But there's certainly it's certainly reasonable to sort of speculate that they were that they were feeling sympathy and leniency for Mr. Eaton. I think that was his trial strategy. But you do agree that you can't get to three without eating, so that we have to resolve that. Yes, yeah, yeah. No, I do think you have to resolve the question. And, and I think that on the legal side, I will say there was a mistake in the government's answering brief, and I apologize for that. The circuit split with respect to the CCE under whether whether an acquitted whether a person acquitted of conspiracy can be one of the underlings for a CCE. There's a circuit split on that. I believe it's the Sixth Circuit that says no, and the Fourth Circuit that says it's okay. The what we said in our answering brief is that the Sixth Circuit follows a different rule from the Ninth Circuit. The Ninth Circuit based on Powell says it's okay for the juries to have inconsistent verdicts and and the Sixth Circuit takes an opposite view. Now the fact of the matter is they don't anymore. When they decided the CCE decision forward, which is cited in both briefs, the ward decision was based on the Sixth Circuit's rule of consistency. Many years later, I think 10 years later, the Sixth Circuit in light of Powell stepped back from that rule. But I don't think there's been a CCE case in the Sixth Circuit where they could sort of reconsider whether that affects the validity of ward. But I think every Powell has held that that the juries can be inconsistent and they often are inconsistent. And I don't think that any circuit since Powell has applied the rule of consistency to a CCE. With respect to the... Ms. White? Oh, I am so far over my time. I'm sorry. It's okay. Well, we're occupying you with our questions and we're going to give your friends on the other side of the case a few minutes additional argument. Thank you. So have you have you concluded or do you need 30 seconds to wrap up? Let me see. No, I think that covers everything. Thank you so much for your indulgence. Thanks. Now for the rebuttal argument, we've got Mr. Feldman and Mr. Breslow. I'd like to give the two of you three minutes for rebuttal. Does that... Do you have an agreement on how to split your time? He'll throw something at me at one minute, Your Honor. So thank you for that. Let me say first that we did argue below that there were not five. It was the government arguing that the five didn't have to be criminally culpable. That was their argument. They do and they weren't. And so what you're left with is the idea that if you're just involved in manufacturing smokable synthetic cannabinoids in this industry, you're guilty and that's it. Unfortunately, for the government selling smokable synthetic cannabinoids is not unlawful. The government admitted that on the record. Their own experts said so during the forfeiture hearing. Selling smokable synthetic cannabinoids is only unlawful if the active ingredient qualifies as an analog. So there's literally no evidence that any of those people knew that XLR11 was an analog. Of course, no one knows whether it's an analog until the jury speaks. And in this instance, as we know, there was consensus in the relevant scientific community that it was not an analog. It is true that the deliberate ignorance instruction was limited to the first theory. That's because the government didn't try to proceed on the second theory. There was literally no evidence, zero, that the defendants had any knowledge of the chemical structure of JWHO18 or how it compared to XLR11. That was not the theory. They didn't try the case on that theory. Instead, the theory was you should just look at how evasive the defendants were, the fact that they were bad people, that their actions were vile and despicable, and, your honor, to paraphrase, the government is asking this court to cut a great road through the law to get after the devil. And if you uphold the constitutionality of this act, and it is an open question, Justice Gorsuch, when he was sitting on the Tenth Circuit, said so in McCarr. I can't improve on Justice Gorsuch's reasoning in McCarr. It's an open question, particularly as applied to by a subjective standard that is interpreted in a way that is so aggressive that literally no one outside the captivity of the DEA could believe it. That's what you're pretending a jury is deciding my client's new. If that's the law, it will be left flat. There will be nowhere left to hide, and there will be nowhere to stand upright when the winds that blow come. I defer to Mr. Breslin. May it please the court. The government's argument to the court was that the deliberative instruction was proper because Mr. Galecki and Mr. Ritchie, quote, specifically and deliberately avoided learning this. The proposition that XLR11 was an analog, that it was substantially similar in chemical structure. The only reason they got to make that argument to the jury below was because they selectively immunized or gave benefits to its witnesses while not giving Mr. Dander and Dr. Libby's testimony to the contrary. We do not concede that there's not a direct contradiction. There is a direct contradiction from the inference that the government tried to draw from the government's witnesses' testimony, that the appellants ran an illicit business. The jury never heard Dr. Libby's testimony and Mr. Dander's testimony about what they sought out. So the only reason the government is able to make that argument here, and it made the argument below, was because of how it selectively immunized the witnesses before it. It doesn't need to be a direct contradiction tit for tat. It needs to be a direct contradiction in the evidence the jury is able to compel, or sorry, to determine from that that there is some contradiction between what the government witnesses said and what the defense witnesses said. It did distort the backfinding process. And for those reasons, we ask you to vacate their convictions or reverse or amend for new trials. Thank you. Thank you, counsel. I want to thank all counsel for the excellent arguments in this difficult case and the Galecki case. So maybe I should call it the Galecki case. Galecki and Ritchie cases shall now be submitted and counsel will hear from us in due course. Thank you again.
judges: GOULD, COLLINS, Silver